249 N.J. Super. 77 (1991)
592 A.2d 13
T.R., PARENT AND GUARDIAN OF J.R., PETITIONERS-APPELLANTS,
v.
NEW JERSEY DIVISION OF DEVELOPMENTAL DISABILITIES, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1991.
Decided June 19, 1991.
*78 Before Judges DEIGHAN, BAIME and A.M. STEIN.
Herbert D. Hinkle argued the cause for appellants.
Michael J. Haas, Deputy Attorney General, argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney for respondent; Michael J. Haas, of counsel; John D. Hugelmeyer, Deputy Attorney General, on the brief).
The opinion of the Court was delivered by ARNOLD M. STEIN, J.A.D.
J.R. appeals the order of the Division of Developmental Disabilities rendering him ineligible for services under the *79 Developmental Disabilities Act, N.J.S.A. 30:6D-23 et seq. Following an extensive hearing, the Administrative Law Judge concluded that J.R. was "precisely the type of person who meets the statutory definition of a developmentally disabled person ... and is eligible for [the Division's] services." The Division Director rejected the ALJ's decision. We reverse. The ALJ's findings and conclusions are supported by substantial credible evidence in the record. The Director's are not.
J.R. is thirty years old. His parents are dead. His mother died in March 1989. T.R., his father, died while this appeal was pending. Since February 1982 he has resided at Devereux Foundations Residential Program in Devon, Pennsylvania. His father's medical insurance program paid for the Devereux placement until October 1988 when coverage for J.R.'s care was exhausted. In anticipation of coverage expiration, T.R. attempted in late 1987 to have J.R. declared eligible for services as a developmentally disabled person. The Division rejected the application on July 29, 1988.
The ALJ made the following uncontradicted factual findings:
T.J.R., J.'s father, testified that J. has been seriously disabled all of his life and during his initial attendance at school was diagnosed as autistic-schizophrenic, among other diagnoses. According to Julie Martin Allen, a social worker employed by respondent, J., during his school years, was primarily classified as emotionally disturbed and had had various diagnoses, including autism, schizophrenia and avoidant personality. She found that J. had attended several different school settings and over the years his behavior had worsened. He was at times aggressive and paranoid and in 1980 due to his worsened behavior his family was unable to handle him and a residential placement was necessary. His I.Q. scores have varied over the years between 64 and 88. She further found that when J. was five years old a psychologist diagnosed him as autistic and found J. to be in need of multi-disciplinary services. She further observed that when administered the [Clinical Adaptive Behaviors Inventory] by respondent on March 29, 1988, he was found to have been "substantially functionally limited in three areas (Self-Direction, Capacity for Independent Living and Learning) and possibly functionally limited in one other area."
....
Ann Marie Giraldi, social service coordinator of Edward French Center at Devereux, testified that she works with J., sees him every day and the only psychiatric services rendered him consist of a once-a-month examination by a *80 psychiatrist and a concomitant prescription for medication. She found J. to have a borderline to average I.Q., and developmental and psychiatric disabilities. She testified that J. relates to her as a child, that he receives residential supervision and workshop supervision constantly. She further testified that J. needs constant reassurance and direction. He suffers temper tantrums and that it was her experience that respondent has heretofore funded a client with a disability similar to that of J.
Dr. Karen Haber, staff psychologist at Devereux, testified that she administers therapy to J. once a week for 45 minutes and has been doing so for approximately one year. She observed that J. functions at a very limited level with constant application of support systems. She further testified that J.'s condition is incurable and chronic.
N.J.S.A. 30:6D-25b provides:
"Development disability" means a severe, chronic disability of a person which: (1) is attributable to a mental or physical impairment or combination of mental or physical impairments; (2) is manifest before age 22; (3) is likely to continue indefinitely; (4) results in substantial functional limitations in three or more of the following areas of major life activity, that is, self-care, receptive and expressive language, learning, mobility, self-direction and capacity for independent living or economic self-sufficiency; and (5) reflects the need for a combination and sequence of special interdisciplinary or generic care, treatment or other services which are of lifelong or extended duration and are individually planned and coordinated. Developmental disability includes but is not limited to severe disabilities attributable to mental retardation, autism, cerebral palsy, epilepsy, spina bifida and other neurological impairments where the above criteria are met.
Dr. David L. Holmes, president of Eden Family Programs and also a consultant to the Division, testified on J.R.'s behalf. He examined the applicant at Devereux in December 1988, where he also reviewed J.R.'s medical records and spoke with Devereux personnel familiar with his case. Holmes diagnosed J.R. as having a childhood onset pervasive developmental disorder, residual state. J.R. was found to have language, cognition, social and motor (muscle movement) development deficiencies. He concluded that J.R. was mentally impaired and required close supervision. Dr. Holmes found no evidence of psychosis or any history of treatment for psychosis. He concluded that J.R. could not be diagnosed as schizophrenic.
Holmes noted that J.R. received supervised vocational activity five days a week, that he lived in a supervised residential complex and that he attended sheltered workshops. He concluded that the services provided at Devereux were appropriate *81 for J.R.'s condition which in his opinion was lifelong. He further concluded that J.R. required interdisciplinary services, was unable to care for himself, required almost constant supervision and that he suffered substantial limitations in both functional and learning disabilities. Moreover, J.R. was substantially limited in his ability to be economically self-sufficient and to live without supervision. According to Dr. Holmes, J.R. did not need psychiatric treatment. He required supervision because of his childlike characteristics. Dr. Holmes recommended residential placement: either continued residence at Devereux or attempted placement in a supervised apartment with supportive employment.
The Division's expert concluded that J.R.'s disability, although arguably classifiable as a pervasive developmental disorder, was primarily psychiatric in nature, thereby rendering him ineligible for the Division's services. She diagnosed J.R. as schizophrenic, and concluded that his primary need was for psychiatric treatment.
The ALJ concluded that J.R. was eligible for the Division's services. He stated:
The totality of the evidence clearly, unequivocally and ineluctably leads to the conclusion that petitioner suffers a severe, chronic disability which is attributable to mental and physical impairments; that the condition manifested itself before age 22 and is likely to continue indefinitely, has been described as both chronic and permanent. Furthermore, by respondent's own standards and in accordance with its Clinical Adaptive Behaviors Inventory, petitioner's disability results in substantial functional limitations in learning areas, self-direction areas, capacity for independent living or economic self-sufficiency areas and appears to further represent a possible functional limitation in the mobility area.
Additionally, petitioner has reflected and has, in fact, demonstrated a need for and has received a combination and sequence of special interdisciplinary or generic care, treatment or other services which are of life-long or extended duration and are individually planned and coordinated, and which services petitioner has been actively receiving for at least the past eight years.
Respondent's assertion that petitioner's "primary disability appears to be one of a psychiatric nature" is completely unsupported by the evidence. The personnel from Devereux who testified at the evidentiary hearing of the matter presented unrebutted and uncontradicted evidence that both petitioner's treatment and disability are primarily and substantially other than psychiatric in *82 nature. He sees a psychiatrist only once a month and then principally for the prescription of medication rather than for treatment, therapy or analysis. The overwhelmingly predominant services rendered petitioner are other than psychiatric in nature.
The Director rejected the ALJ's conclusions. Instead he relied upon the opinion of the Division's expert, the Director's own staff member, that J.R. was schizophrenic and in need of psychiatric treatment rather than the care and services provided by the Division. He concluded that "a failure to receive intensely psychiatric services at a privately arranged placement does not establish as fact that such services are not needed by the person so placed." We disagree because the evidence in the record mandates a contrary result.
We recognize that we must not substitute our judgment for that of the agency head. Clowes v. Terminex Intern., Inc., 109 N.J. 575, 587, 538 A.2d 794 (1988). But we must reverse if, after careful survey of the record, we conclude that the agency's findings are unsupported by the evidence. T.L. v. Div. of Developmental Disabilities, Dept. of Human Serv., 243 N.J. Super. 476, 486-88, 580 A.2d 272 (App.Div. 1990).
The Director's reliance upon the opinion of the Division's expert is misplaced. Her conclusions were accurately described by the ALJ as the product of "a paper review of multiple, contradictory and inconclusive attempts of various medical and non-medical examiners to diagnose petitioner's condition during his childhood rather than upon an examination and analysis of the treatment and services rendered petitioner during the most current eight-year period while a resident at the Devereux Foundation."
The diagnosis of schizophrenia and the view that psychiatric treatment should be the primary care modality are unsupported by the evidence. The diagnosis comes from such unsubstantiated sources as early tentative evaluations of J.R. as a young child and his father's testimony on cross-examination that J.R. was refused admission to Bancroft School because that facility "didn't have enough psychiatric help"  a statement without *83 evidentiary value in the absence of any further evaluation of Bancroft's review of J.R. and the specific reasons for his rejection. The record is barren of any reasons given by this witness for her post-interview diagnosis that J.R. is a schizophrenic. It is no more than a net opinion, leading to the inevitable and equally insupportable conclusion that his primary care should be psychiatric treatment. Buckelew v. Grossbard, 87 N.J. 512, 524, 435 A.2d 1150 (1981).
We also understand the ALJ's skepticism of this expert's credibility after she testified that J.R.'s disability was not likely to continue indefinitely (N.J.S.A. 30:6D-25b(3)) because he will have periods of remission from schizophrenia.
Finally, the record simply does not support the Director's observation that the type of care given J.R. at Devereux was inappropriate for his needs.
We agree with the relief proposed by the ALJ.
[A]ll future services shall be provided by respondent by institutions, agencies or facilities chosen by it which are appropriate to meet the needs of petitioner. Although at the present time, the Devereux Foundation has been providing the required services, respondent need not continue to pay for the services rendered by the Devereux Foundation, if, in its opinion, similar, adequate and comprehensive services may be provided elsewhere at institutions or facilities of respondent's choosing. In short, respondent, rather than petitioner or petitioner's guardian, shall have the option of what, where and by whom the necessary, appropriate and adequate services may be provided.
We also agree with the ALJ's ruling that J.R.'s father should be reimbursed for the funds expended by him to provide the services required after T.R.'s insurance coverage expired. See Lascari v. Board of Educ., 116 N.J. 30, 53, 560 A.2d 1180 (1989) (parents entitled to reimbursement when school district failed to provide handicapped child with appropriate education).
We recognize the considerable strain placed upon the Division of Developmental Disability by the lack of sufficient money and other resources to service the needs of its actual and potential constituency. Nevertheless, the Division will best serve its function by determining eligibility in accordance with the standards mandated by statute.
*84 Reversed and remanded to the Division of Developmental Disabilities for further proceedings consistent with this opinion.